IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ALLEN MESSICK, <br><br>                  Plaintiff, <br><br> v. <br><br> MCKESSON CORP., et al., <br><br>               Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT <br><br><br> Case No. 2:13-CV-1036  TS |

       This matter is before the Court on Plaintiff Allen Messick's Motion for Summary Judgment on Plaintiff's claim for short-term disability benefits ("STD" benefits) and long-term disability benefits ("LTD" benefits) under ERISA.  For the reasons discussed more fully below, the Court will deny Plaintiff's Motion.

## I.  FACTUAL BACKGROUND

       Plaintiff Allen Messick is an employee of McKesson Corporation.  Plaintiff is a participant in the McKesson Corporation Short Term Disability Plan (the "STD Plan") and the McKesson Long Term Disability Plan (the "LTD Plan").

       The STD Plan provides benefits to disabled employees, or those employees who are unable "to perform all of the material and substantial duties of the covered employee's occupation on an active employment status because of an injury or sickness."[1]  An employee is eligible for STD benefits if he or she is disabled for a period of time ranging from seven

---

[1] Docket No. 13-1, at 28.

consecutive days to 26 weeks.[2]  McKesson is the STD Plan sponsor and administrator.[3]  The

Life Insurance Company of North America ("LINA") is the STD Plan claims administrator.[4]  As

the claims administrator, LINA has the sole discretion and authority to interpret the terms of the

STD Plan and administer claims under the STD Plan.[5]

The LTD Plan provides benefits to an employee who, solely because of injury or

sickness, is "unable to perform the material duties of his or her Regular Occupation" and "unable

to earn 80% or more of his or her Indexed Earnings from working in his or her Regular

Occupation."[6]  LINA funds the LTD Plan benefits under an insurance policy agreement with

McKesson.[7]  McKesson is the LTD Plan administrator, but has appointed LINA the "named

fiduciary for deciding claims for benefits under the [LTD] Plan, and for deciding any appeals of

denied claims."[8]

A.  PLAINTIFF'S STD CLAIM

On August 28, 2012, Plaintiff submitted a claim for STD benefits under the STD Plan.[9]

Plaintiff's claim for STD benefits was based on chronic pain and cognitive defects due to pain

medication.[10]  On October 2, 2012, after an initial investigation, LINA provided STD benefits

through September 13, 2012.[11]  LINA indicated to Plaintiff that it would not authorize additional

---

[2] *Id.* at 5.

[3] *Id.* at 26.

[4] *Id.*

[5] *Id.* at 20.

[6] Docket No. 19, at 119.

[7] *Id.* at 144.

[8] *Id.*

[9] Docket No. 14, at 23.

[10] *Id.*; Docket No. 25, at 6.

[11] Docket No. 13-1, at 199–201; Docket No. 16, at 149–50.

STD benefits without updated medical information to support continued payment.[12]  LINA also requested additional medical records from Plaintiff's pain management clinic to support payment of additional benefits.[13]

On October 18, 2012, LINA again informed Plaintiff that it would not approve benefits beyond September 13, 2012, without additional medical information to support the payment of such benefits.[14]  LINA indicated its willingness to consider additional medical information, if provided.[15]

On December 18, 2012, LINA received Plaintiff's additional medical records, which included records through October 20, 2012.[16]  Based on these records, the reviewing nurse at LINA determined that it would be reasonable to extend Plaintiff's STD benefits through October 31, 2012.  LINA based its determination on medical evidence indicating continued pain, daily headaches stemming from a previous brain surgery, and trigeminal neuralgia.[17]

On January 24, 2013, LINA received additional medical records from Plaintiff, and after a review of the records, LINA authorized the payment of Plaintiff's STD benefits through November 8, 2012.[18]  LINA did not provide additional benefits because it determined through a

---

[12] Docket No. 16, at 145.

[13] *Id.* at 144.

[14] *Id.* at 97–98.

[15] *Id.*

[16] Docket No. 13-1, at 185.

[17] Docket No. 20, at 122–23.  Trigeminal neuralgia is "a neurologic condition of the trigeminal facial nerve, characterized by paroxysms of flashing, stablike pain radiating along the course of a branch of the nerve from the angle of the jaw." MOSBY'S MEDICAL, NURSING & ALLIED HEALTH DICTIONARY 1589–90 (Kenneth N. Anderson et al. 4th ed. 1993).

[18] Docket No. 20, at 41–42.

review of the medical records that there was no support for such benefits.[19]  According to LINA, the medical records indicated Plaintiff had sufficient pain relief without significant side effects from pain medication.[20]

On February 1, 2013, LINA informed Plaintiff that it determined it would not extend STD benefits beyond November 8, 2012.[21]  Again, LINA informed Plaintiff he could submit additional information to support payment of benefits beyond November 8, 2012.[22]

On March 12, 2013, LINA received a letter from Plaintiff's counsel indicating he would be representing Plaintiff and requesting information about Plaintiff's STD claim.[23]  LINA sent a copy of Plaintiff's claim information to Plaintiff's counsel, but LINA used an erroneous name and street address for Plaintiff's counsel when sending the information.[24]

On April 3, 2013, LINA sent a letter to Plaintiff indicating LINA had received his request for appeal and on April 15, 2013, LINA notified Plaintiff that it needed an extension to complete the STD claim appeal.[25]  On April 23, 2013, LINA sent a letter to Plaintiff's counsel acknowledging its April 3, 2013 letter was sent in error and it had not received an appeal letter.[26] LINA's April 23, 2013 letter was also misaddressed.[27]

---

[19] *Id.*

[20] *Id.*

[21] Docket No. 16, at 88–89.

[22] *Id.*

[23] Docket No. 19, at 193–94.

[24] Docket No. 16, at 99; Docket No. 10, at 5.

[25] Docket No. 16, at 95–96.

[26] *Id.* at 99.

[27] *Id.*

Plaintiff submitted his STD claim appeal.  On July 30, 2013, LINA sent a letter to Plaintiff's counsel acknowledging receipt of Plaintiff's actual STD claim appeal, but this letter was also misaddressed.[28]

On September 6, 2013, a LINA staff physician reviewed the medical records and completed the STD claim appeal.[29]  The LINA physician determined that the medical evidence did not support Plaintiff being disabled after November 8, 2012.[30]  On September 19, 2013, LINA issued its notice of the appeal decision to Plaintiff's counsel, which summarized the LINA physician's conclusions.[31]  The notice of determination of the appeal was also misaddressed.[32]

B.  PLAINTIFF'S LTD CLAIM

On January 8, 2013, LINA notified Plaintiff that it was beginning its review of his LTD claim.[33]  On January 18, 2013, LINA interviewed Plaintiff as part of its LTD claim investigation.[34]  Plaintiff explained on the phone how his pain medication did not subdue the pain sufficiently to allow him to work.[35]

As part of the LTD claim review, the LTD claim manager summarized the medical evidence used in the STD claim review.[36]  The claim manager then referred the claim to a new physician to conduct a review of the medical evidence and to evaluate Plaintiff's LTD claim.[37]

---

[28] *Id.* at 86–87.

[29] Docket No. 19, at 149–52.

[30] *Id.*

[31] Docket No. 16, at 84.

[32] *Id.*

[33] *Id.* at 128–29.

[34] Docket No. 13-1, at 108–09.

[35] *Id.*

[36] *Id.* at 102–03.

[37] *Id.* at 90–93.

LINA also obtained additional medical records from Plaintiff's health care professionals concerning his pain management program.[38]

After review of the medical records, the LTD claim-reviewing physician determined that the evidence did not support Plaintiff's claim for disability beyond November 8, 2012.[39]  The physician cited to the absence of functional losses, limitations, or reported side effects from the pain medications.[40]

On February 15, 2013, LINA informed Plaintiff it would not be extending the LTD benefits and informed Plaintiff of his right to appeal the determination.[41]  Plaintiff did not submit an appeal of LINA's LTD claim denial.

## II.  STANDARD OF REVIEW

The parties disagree as to the standard of review to be applied here.  Defendants argue that the Court should employ the arbitrary-and-capricious standard, while Plaintiff argues for de novo review.

A denial of benefits under an ERISA plan "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[42]  If "the plan gives an administrator discretionary authority to determine eligibility for benefits or to construe its terms, [courts]

---

[38] Docket No. 16, at 61.

[39] Docket No. 13-1, at 90–93.

[40] *Id.*

[41] Docket No. 16, at 57–59.

[42] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious."[43]

Plaintiff argues for a de novo review because of procedural irregularities associated with LINA misaddressing correspondence to Plaintiff's counsel about Plaintiff's STD claim and appeal.  Plaintiff also argues that if the Court is to apply the arbitrary-and-capricious review, the Court should be less deferential than it otherwise would be because Defendants have not completely mitigated the conflict between McKesson's interests as the STD Plan sponsor and administrator and Plaintiff's interests as a McKesson employee.

For the reasons discussed more fully below, the Court will conduct an arbitrary-and-capricious review, but give less deference to Defendants because of its failure to deliver material correspondence to Plaintiff's counsel.

A.  PROCEDURAL IRREGULARITIES

Plaintiff argues that the Court should apply the de novo standard of review because of procedural irregularities.  Plaintiff argues that LINA repeatedly misaddressing correspondence to Plaintiff's counsel constitutes a procedural irregularity that warrants de novo review.

The Tenth Circuit has held that "when a serious procedural irregularity exists, and the plan administrator has denied coverage, an additional reduction in deference is appropriate."[44] However, the Tenth Circuit has noted that a serious procedural irregularity is not "present in every instance where the plan administrator's conclusion is contrary to the result desired by the

---

[43] *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009) (citation and internal quotation marks omitted).

[44] *Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1006 (10th Cir. 2004), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, at 117 (2008).

claimant."[45]   The irregularity must raise "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim."[46]

In support of his position, Plaintiff directs the Court to a line of cases applying the de novo standard where a claim for benefits is deemed denied because the plan administrator failed to render a decision within the time limits mandated by ERISA.[47]   In each of the cases on which Plaintiff relies, the claim administrator either did not issue a claim decision or substantially delayed a claim decision.[48]   Therefore, the courts in those cases found that the claim administrator acted outside the discretion granted it under ERISA and the plans.  The claim administrator acting outside the discretion of the plan constituted a procedural irregularity raising serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim.

In this case, LINA did not properly address to Plaintiff's counsel Plaintiff's claim file, a letter indicating the deadline for submission of an appeal, a letter acknowledging receipt of

---

[45] *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1214 n.2 (10th Cir. 2006); *see also Grosvenor v. Qwest Commc'ns Int'l*, 191 F. App'x 658, 662 (10th Cir. 2006) (unpublished decision) ("A serious procedural irregularity is not present every time a plan administrator comes to a decision adverse to the claimant on conflicting evidence.").

[46] *McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1031 (8th Cir. 2000).

[47] *See, e.g.*, *LaAsmar v. Phelps Dodge Corp.*, 605 F.3d 789, 796–99 (10th Cir. 2010); *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 827 (10th Cir. 2008); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 (10th Cir. 2003).

[48] *LaAsmar*, 605 F.3d at 799 (stating "Although MetLife eventually denied the [Plaintiffs'] claim on administrative review, it did so substantially outside the time period within which the Plan vested it with discretion to interpret and apply the Plan. Thus, it was not acting within the discretion provided by the Plan."); *Kellogg*, 549 F.3d at 827 (stating "MetLife clearly had a responsibility under ERISA to provide [Plaintiff's] counsel with a copy of the latest SPD and plan documentation . . . and . . . to issue a decision on [Plaintiff's] appeal . . . MetLife did neither."); *Gilbertson*, 328 F.3d at 631 (stating "[w]e hold that when substantial violations of ERISA deadlines result in the claim's being automatically deemed denied on review, the district court must review the denial *de novo,* even if the plan administrator has discretionary authority to decide claims.").

appeal, and the appeal determination.  Plaintiff claims the misaddressing correspondence warrants de novo review because it is a procedural irregularity.  Plaintiff does not claim the alleged procedural irregularity resulted in LINA not issuing a claim determination or providing an opportunity to appeal within a reasonable amount of time.  However, Plaintiff claims he was not able to exhaust all the administrative remedies because the appeal determination letter contained an opportunity for a second level appeal of which he was not aware.[49]  Because of LINA's error, Plaintiff states that he was not afforded the opportunity to appeal his claim determination a second time before filing in this Court.

The misaddressed correspondence did result in some harm to Plaintiff, but the error occurred outside the context of the merits of the claim determination.  It is not a procedural irregularity associated with the substance of LINA's determination of Plaintiff's STD claim or LINA issuing a determination.  Therefore, the Court finds that LINA's error does not rise to the level of a procedural irregularity contemplated by the case law necessary to merit a de novo review because it does not raise serious doubts as to whether LINA's claim determination was reasonable.  Recognizing that LINA did error, however, the Court will not grant LINA all the deference it would otherwise be entitled under the arbitrary-and-capricious standard.

B.  CONFLICT OF INTEREST

Plaintiff argues LINA should not be afforded all the deference under the arbitrary-and-capricious standard because of a conflict of interest between LINA and the STD Plan beneficiaries.

---

[49] Docket No. 16, at 84.

A conflict of interest exists where "a plan administrator both evaluates claims for benefits and pays benefits claims."[50]  This conflict can exist even when a third-party evaluates claims, such as when "the plan administrator is not the employer itself but rather a professional insurance company."[51]  "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion."[52]

The Tenth Circuit has "crafted a sliding scale approach where the reviewing court will always apply an arbitrary and capricious standard, but will decrease the level of deference given in proportion to the seriousness of the conflict."[53]  Consequently, a conflict "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision . . . [and] should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy."[54]

Plaintiff argues that there is a conflict of interest between LINA and the STD Plan beneficiaries.[55]  Plaintiff states that the STD plan administrator is a self-insuring employer.[56] The STD plan states, however, that LINA has the "sole discretion and authority to interpret the

---

[50] *Glenn*, 554 U.S. at 112.

[51] *Id.* at 114.

[52] *Firestone*, 489 U.S. at 115.

[53] *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (citations, internal quotation marks, and alterations omitted).

[54] *Firestone*, 489 U.S. at 117.

[55] Docket No. 28, at 11.

[56] *Id.* (citing Docket No. 13-1, at 26).

terms of the STD plan as well as any other information relating to claims and appeals."[57] Although the STD Plan names McKesson as the plan sponsor and administrator, the claims administrator is LINA.  Thus, McKesson sponsors the Plan and pays the STD benefits, but it is LINA, as the claims administrator, that determines whether McKesson will pay the STD benefits.[58]

In *Metropolitan Life Insurance Company v. Glenn*, the Supreme Court set forth how to evaluate whether a conflict of interest exists and the affect a conflict would have on the appropriate standard of review.[59]  The Court evaluated a potential conflict where an employer contracted with an insurance company to be both the claims administrator and insurer for the employer.[60]  The plan granted the insurance company, as the claims administrator, discretionary authority to determine the validity of benefits claims and provided that the insurance company, as the insurer, would pay valid benefits claims.[61]  The Court adopted the analysis in *Firestone Tire & Rubber Company v. Bruch*, which set forth four principles to consider when evaluating a conflict of interest.[62]

> [First] [i]n determining the appropriate standard of review, a court should be guided by principles of trust law; in doing so, it should analogize a plan administrator to the trustee of a common-law trust; and it should consider a benefit determination to be a fiduciary act . . . ow[ing] a special duty of loyalty to the plan beneficiaries . . . .  [Second] [p]rinciples of trust law require courts to review a denial of plan benefits under a de novo standard unless the plan provides to the contrary. . . .  [Third] [w]here the plan provides to the contrary by granting the administrator or fiduciary discretionary authority to determine eligibility for benefits, . . . trust principles make a deferential standard of review appropriate

---

[57] Docket No. 13-1, at 20.

[58] Docket No. 13-1, at 18.

[59] 554 U.S. at 110.

[60] *Id.* at 108.

[61] *Id.*

[62] *Id.* at 110–11.

. . . . [Fourth] [i]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.[63]

In this case, the alleged conflict of interest is factually different from the conflict in *Glenn* because LINA's sole role in the process is to determine STD claim validity. LINA does not pay valid claims. In *Glenn*, the insurance company determined claim validity and paid valid claims. In this case, McKesson is responsible to pay benefits on claims that LINA determines valid. The fourth principle set forth in *Firestone* and adopted by *Glenn* requires any conflict to be weighted as a factor in determining whether there is an abuse of discretion. In this case, however, there is no conflict of interest. Therefore, under *Glenn* and *Firestone*, a deferential standard of review is appropriate.

Plaintiff relies heavily on *Glenn* for the proposition that hiring a third-party claims administrator does not sufficiently remove the conflict of interest to merit a fully deferential review.[64] Plaintiff states, "Worse for McKesson, *Glenn* went on to say that even if an employer attempted to mitigate a conflict of interest by choosing a third-party insurance company to administer the plan, such an effort would be insufficient to remove the conflict of interest."[65] Plaintiff relies on the following passage in *Glenn* for support of his position:

> [W]e nonetheless continue to believe that for ERISA purposes a conflict exists. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan. An employer choosing an administrator in effect buys insurance for others and consequently (when compared to the marketplace customer who buys for himself) may be more interested in an insurance company with low rates than in one with accurate claims processing.[66]

---

[63] *Id.* at 111 (internal citations and quotation marks omitted).

[64] Docket No. 28, at 11.

[65] *Id.*

[66] *Glenn* 554 U.S. at 114.

In *Glenn*, however, the insurance company, which acted as the plan administrator, held a financial interest in the outcome in the benefits claims it was deciding because it paid benefits on valid claims.  Therefore, *Glenn* holds that an employer cannot sufficiently mitigate the conflict of interest to merit a fully deferential review by entering into an insurance contract with a third party where the third party takes the role of a self-insured company.  The Court determined that if an employer were to attempt to mitigate the conflict of interest by hiring a third party to determine and pay claims, then the reviewing court should consider the conflict as a factor in deciding whether the third party acted arbitrarily and capriciously.  Because there is no such conflict in this case, the Court will not consider a conflict of interest as a factor in its review.

In sum, the Court will employ an arbitrary-and-capricious review of LINA's claim determination, but the Court will not give as much deference to LINA as it otherwise would because of its carelessness in corresponding with Plaintiff's counsel.

## III.  DISCUSSION

Plaintiff moves the Court to reverse LINA's STD claim determination and remand the LTD determination to LINA for appeal.[67]  For the reasons discussed below, the Court finds LINA acted reasonably when making its STD claim determination.  The Court need not consider the LTD claim because LTD benefits are only paid under the LTD Plan if the STD benefits are exhausted.  Thus, the LTD claim is moot.

"'Under the arbitrary-and-capricious standard, our review is limited to determining whether the interpretation of the plan was reasonable and made in good faith.'"[68]

In applying the arbitrary and capricious standard, the decision will be upheld so long as it is predicated on a reasoned basis.  In fact, there is no

---

[67] Docket No. 28.

[68] *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011) (quoting *LaAsmar*, 605 F.3d at 795).

requirement that the basis relied upon be the only logical one or even the superlative one. Accordingly, [the Court's] review inquires whether the administrator's decision resides somewhere on a continuum of reasonableness—even if on the low end.

A lack of substantial evidence often indicates an arbitrary and capricious decision. Substantial evidence is of the sort that a reasonable mind could accept as sufficient to support a conclusion. Substantial evidence means more than a scintilla, of course, yet less than a preponderance. The substantiality of the evidence is evaluated against the backdrop of the administrative record as a whole.[69]

Plaintiff argues LINA acted arbitrarily and capriciously because LINA mischaracterized and blended the opinions of different physicians to support its denial of Plaintiff's STD claim, LINA relied only on the medical information that supported denying Plaintiff's benefit claim, and LINA ignored the significance of Plaintiff's impairments on his ability to perform his occupation. In addition to these arguments, Plaintiff also contends LINA's claim denial was unreasonable because it required Plaintiff to produce objective evidence of his disability when not specifically required by the STD Plan. Plaintiff further contends that, if objective evidence were required, Plaintiff's medical records provide sufficient objective evidence of his disability.

The STD Plan defines disabled as, "Inability to perform all of the material and substantial duties of the covered employee's occupation on an active employment status because of an injury or sickness."[70] The issue before the Court is whether LINA's decision to deny Plaintiff's STD disability benefits beyond November 8, 2012 "resides somewhere on a continuum of reasonableness—even if on the low end."[71] The Court will consider Plaintiff's arguments to the extent that they argue that LINA's decision was unreasonable.

---

[69] *Adamson*, 455 F.3d at 1212 (citations and internal quotation marks omitted).

[70] Docket No. 13-1, at 28.

[71] *Adamson*, 455 F.3d at 1212 (citations and internal quotation marks omitted).

First, Plaintiff argues that LINA's claim decision was unreasonable because it mischaracterized and blended the opinions of different physicians in order to support the denial of Plaintiff's claim.[72]  Plaintiff points to the denial letter sent to Plaintiff on February 1, 2013, as evidence that LINA mischaracterized the physicians' statements.[73]  In the letter, LINA states that it reviewed the notes from Dr. Lischwe and Dr. Tarrant and that the November 8, 2012 notes indicate that Plaintiff had 70 percent quality of life from pain medications, which was adequate for quality of life.  The letter also acknowledges Plaintiff's complaints that he had an inability to function due to cognitive effects of the pain medication, but there were no clinical findings to demonstrate such effects.  The letter also states that the doctor noted Plaintiff was alert and oriented during the visit without signs of excessive sedation.  The letter concluded, that based on the medical information provided, LINA did not find Plaintiff was too disabled to return to work.

Plaintiff points to several factual errors with LINA's letter including that Dr. Lischwe did not see Plaintiff on November 8, 2012, Dr. Tarrant is not a doctor but is a certified physician's assistant, and the letter includes improper pronouns to describe Ms. Tarrant.

The Court finds that these errors do not demonstrate LINA acted unreasonably in denying Plaintiff's STD claim for benefits beyond November 8, 2012.  They do demonstrate, however, that LINA considered the opinions of both Dr. Lischwe and the certified physician's assistant, Ms. Tarrant, in making its determination.  Reliance on both a doctor and certified physician's assistant to make a STD claim benefits determination is reasonable.  Further, as will be discussed, the statements relied upon by LINA in making its claim determination find support in the administrative record.

---

[72] Docket No. 10, at 10.

[73] Docket No. 16, at 108.

Plaintiff relies on Dr. Lischwe's note from a December 7, 2012 office visit to support the position that Plaintiff was disabled after November 8, 2012.[74]  The note states, "Reason for visit . . . Neuralgia . . . has done better with BCH Pain Management Clinic he has increased meds . . . He is still unable to work due to cognitive effects of medication and due to days when pain is worse."[75]  Additionally, the note indicates that the "Trigeminal Neuralgia [is] improved but [Plaintiff is] not very functional due to large doses of narcotics."[76]  Plaintiff also relies on a note from Ms. Tarrant from December 6, 2012, wherein she indicates, "He had shortness of breath and chest congestion . . . after increasing his dose of methadone . . . continues to have chronic headache . . . [I] asked patient to taper down [methadone dosage]."

Plaintiff's interpretation of these two notes is that Plaintiff continued to be impaired beyond November 8, 2012, by either the side effects of increased pain medication or the pain from trigeminal neuralgia.[77]  Thus, Plaintiff concludes that it was a mischaracterization by LINA to state that Plaintiff achieves 70 percent pain relief for an adequate quality of life.[78]  Such a mischaracterization by LINA, Plaintiff argues, is an abuse of discretion.

Defendants respond that LINA took Plaintiff's pain into account when making its determination, but that additional medical evidence did not support Plaintiff being classified as disabled after November 8, 2012.[79]  Defendants argue that LINA considered Plaintiff's pain when it granted disability benefits up until he enrolled in a pain management program and began

---

[74] Docket No. 10, at 12.

[75] *Id.*

[76] *Id.*

[77] *Id.* at 14.

[78] *Id.*

[79] Docket No. 25, at 30.

showing improvement from that program.[80]  Because Ms. Tarrant managed Plaintiff's pain treatment, LINA relied heavily on her opinion.   From October 3, 2012, through February 12, 2013, Ms. Tarrant's notes document improvement in Plaintiff's pain without significant cognitive issues.  On October 3, 2012, Plaintiff had only 40 percent pain relief, which rose to 80 percent on December 6, 2012, before dropping and leveling off at 70 percent as of February 4, 2013.[81]  Throughout these visits, Ms. Tarrant reported the pain medication was not having any adverse effects.  She noted Plaintiff was alert and orientated without signs of excessive sedation.[82]  Defendants recognize that at times Plaintiff complained of pain, but the attending health care providers indicated that Plaintiff was not subject to specific restrictions at work or in daily living.[83]

Plaintiff relies heavily on what Dr. Lischwe writes in his December 7, 2012 office visit notes, "[Plaintiff] is still unable to work due to cognitive effects of medication and due to days when pain is worse."[84]  It is unclear whether this is Dr. Lischwe's assessment of Plaintiff or if this is something Plaintiff said to Dr. Lischwe.  It would be reasonable to construe this statement either way.  However, with Ms. Tarrant's reports indicating Plaintiff's consistent improvement in pain, without signs of cognitive effects from the pain management treatment, it was reasonable for LINA to conclude that Plaintiff was improving and improved sufficiently to return to work.

Second, Plaintiff argues that LINA only focused on the medical evidence that supported denying Plaintiff's STD Claim and was therefore unreasonable in its claim denial.  Plaintiff

---

[80] *Id.*

[81] Docket No. 20, at 18–28 .

[82] *Id.*

[83] *Id.* at 1–3.

[84] Docket No. 10, at 12.

relies on *Rasenack ex rel. Tribolet v. AIG Life Insurance Company*,[85] for the proposition that a claims administrator cannot "cherry-pick the information helpful to its decision to deny [a claim] and disregard the contrary opinions of the medical professionals who examined, treated, and interviewed [Plaintiff]."[86]  It is true that LINA may not cherry-pick the record and focus on only the medical information that supports denial of the STD Claim.  However, in *Rasenack*, what the Tenth Circuit found unreasonable was that the claims administrator focused on only information supporting its claim without conducting a full investigation into the evidence provided by the plaintiff.[87]  There is nothing to suggest LINA did this here.

Plaintiff also argues that LINA unreasonably relied on the information in Ms. Tarrant's notes regarding the November 8, 2012 office visit when making its STD claim determination.[88]  However, LINA's December 7, 2012 STD claim determination letter relies on both Dr. Lischwe and Ms. Tarrant's office visit notes.

In the letter informing Plaintiff that it would not extend Plaintiff's STD benefits beyond November 8, 2012, LINA told Plaintiff he could appeal LINA's decision and provide additional materials to support his claim.[89]  This follows the same pattern that LINA had used before when issuing a determination.  In each previous instance, LINA would consider new evidence and would decide to extend benefits.  In this instance, however, after considering evidence through February 2013, LINA did not extend Plaintiff's STD benefits.  The record indicates that LINA

---

[85] 585 F.3d 1311 (10th Cir. 2009).

[86] *Id.* at 1326.

[87] *Id.* at 1326–27.  ("Given AIG's failure to perform a more thorough investigation and to credit the evidence submitted by [plaintiff] . . . we are not persuaded the . . . conclusions of the reviewing physicians provide a sufficient grounds for AIG's denial of [plaintiff's] claim for benefits.").

[88] Docket No. 10, at 15.

[89] Docket No. 16, at 88–89.

18

did not unreasonably rely on information from a single doctor's visit to make its claim determination, but instead considered evidence from November 2012 to February 2013.

Third, Plaintiff contends that LINA unreasonably dismissed the demands of his job when concluding that his impairments do not preclude him from performing his occupation.[90]  There is little in the record regarding Plaintiff's material and substantial duties in his occupation.  While Dr. Lischwe's notes contain information about Plaintiff being unable to return to work, Ms. Tarrant affirmatively placed no restrictions on Plaintiff's workload.[91]  In light of the apparent progress Plaintiff was making in his pain management program, it was reasonable for LINA to conclude that Plaintiff was able to perform his material and substantial job duties.  Furthermore, Plaintiff's attending physicians heard his complaints, but did not impose work restrictions or perform additional tests to determine whether he was able to work.  This indicates that Plaintiff's attending physicians saw no need to impose work restrictions because of Plaintiff's documented improvement.

Fourth, Plaintiff argues that requiring Plaintiff to produce objective evidence of his disability to obtain STD benefits adds requirements not included in the STD Plan.[92]  Additionally, Plaintiff argues Defendants may not raise an objective evidence requirement after an appeal to the Court because "it is an impermissible *post hoc* rationalization, prohibited by the 10th Circuit."[93]

The administrative record demonstrates LINA considered both objective and subjective evidence.  Plaintiff's attending physicians made notes of Plaintiff's subjective complaints and

---

[90] Docket No. 10, at 15.

[91] Docket No. 20, at 2, 4.

[92] Docket No. 28, at 12.

[93] *Id.* at 13 (citing *Flinders v. Workforce Stabilization Plan of Phillips Petroleum*, 491 F.3d 1180, 1190–91 (10th Cir. 2007)).

those notes were considered by LINA's reviewing physician.[94]  The Court can conclude, therefore, that LINA did not act unreasonably in considering the medical evidence and that it did not impose a requirement that was not in the STD Plan.

## IV.  CONCLUSION

The Court, having reviewed the record under the standard discussed above, finds that LINA's determination not to extend Plaintiff's STD benefits beyond November 8, 2012, was reasonable.  The Court also finds that LINA's determination not to provide LTD benefits to Plaintiff is reasonable because Plaintiff has not exhausted the STD benefit period required to claim LTD benefits.

It is therefore

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 10) is DENIED.

The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff, and close this case forthwith.

DATED February 4, 2015.

BY THE COURT:

_____

TED STEWART

United States District Judge

---

[94] Docket No. 19, at 149–52.